UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.: 1:08-CV-10

VERNON HADDEN                                                                                               PLAINTIFF

v.

UNITED STATES OF AMERICA                                                                       DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiff's petition for review of an administrative determination of the Department of Health and Human Services. Briefs have been submitted by both parties (Docket #20,21). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's petition is DISMISSED.

## BACKGROUND

Plaintiff Vernon Hadden appeals the administrative decision of the Department of Health and Human Services denying his request for a waiver of recovery of a conditional payment made by Medicare for his medical expenses. On August 24, 2004, Plaintiff was severely injured when he was struck by a public utility vehicle in Todd, Kentucky. The vehicle, owned by Pennyrile Rural Electric Cooperative Corporation ("Pennyrile"), veered leftward and struck Plaintiff, a pedestrian, when an unidentified motorist ran a stop sign. Plaintiff settled his claims against Pennyrile and its driver for $125,000, in addition to receiving $10,000 in Kentucky basic reparations benefits. Under the terms of a release/indemnity agreement, Plaintiff agreed to pay and satisfy all medical expenses, liens, and/or claims related to the incident.

Plaintiff's medical expenses were conditionally paid for by Medicare pursuant to the Social Security Act, 42 U.S.C. § 1395 *et seq*. Under the Medicare Secondary Payer Act, the Administrator of the Centers for Medicare & Medicaid Services ("CMS") has a statutory right of

recovery of conditional payments made by Medicare where a payment has been made under liability or no-fault insurance. 42 U.S.C. § 1395y(b)(2). CMS assessed Plaintiff's conditional payment in the amount of $62,338.07 and sought recovery pursuant to 42 C.F.R. § 411.23. In total, Plaintiff submitted payments to CMS for $64,252.37.[1]

On May 10, 2005, Plaintiff sent a letter to CMS requesting a "complete waiver of any Medicare subrogation claim." Plaintiff argued that a reasonable fault allocation would be ten percent for Pennyrile and ninety percent for the unidentified motorist under Kentucky comparative fault principles. Therefore, he argued, "CMS could expect to recover no more than ten percent of the total principle amount of any Medicare subrogation claim." CMS treated Plaintiff's request as one for compromise under 42 C.F.R. § 401.613(c)(2).

On November 10, 2005, CMS denied the request based on its determination that Plaintiff's claim did not meet the criteria for compromise under 42 C.F.R. § 401.613(c)(2). On November 15, 2005, Plaintiff requested reconsideration of the denial. CMS upheld the denial and informed Plaintiff that there was no right to appeal the compromise determination.

Plaintiff then requested a waiver of recovery. As justification for the waiver, Plaintiff argued that the recovery should be reduced to ten percent of the principal amount based on equitable and comparative fault principles, or alternatively, the recovery should be waived in its entirety because Plaintiff was not made whole with respect to the underlying tort claim. On March 15, 2006, CMS denied Plaintiff's request. On May 24, 2006, CMS denied Plaintiff's request for reconsideration. CMS explained its decision as follows:

---

[1] This amount reflects the addition of accrued interest since Plaintiff did not repay the debt in full within sixty days of the original demand. 42 C.F.R. § 411.24(m).

> [A]fter examining all the facts and evidence, we find no basis for setting aside or amending our initial determination on your waiver request. There were no documented out of pocket expenses submitted related to the accident and your client's financial hardship appears to have existed prior to the accident. . . . It has not been proven that repaying Medicare in full puts your client in a worse position than before the accident or deprives him of money needed to meet ordinary and necessary living expenses.

Plaintiff appealed the decision. Upon a review of the administrative record, a Medicare Qualified Independent Contractor ("QIC") returned a decision in favor of CMS. Plaintiff was informed that he could appeal the QIC's decision to an Administrative Law Judge ("ALJ").

Plaintiff appealed and a hearing was held on January 24, 2007. The ALJ issued an opinion finding in favor of CMS. The ALJ held that "[t]here is no statutory, regulatory, or policy basis to reduce or waive the overpayment. The equitable arguments proposed by [Plaintiff] are beyond the plain language of the statute, regulations and policy, and there is no reason to go beyond that plain language." Plaintiff appealed the ALJ's decision to the Medicare Appeals Council (the "Council"). On January 9, 2008, the Council adopted the ALJ's decision.

On January 22, 2008, Plaintiff filed the present action in federal court, claiming that the United States "misapplied statutes, regulations and rules regarding subrogation, and plaintiff has suffered loss as a result." On April 7, 2008, the Court remanded the case to the Secretary of Department of Health and Human Services pursuant to 42 U.S.C. § 405(g).

On August 28, 2008, the Council issued an amended decision finding no merit to Plaintiff's argument that the amount of recovery should be reduced to ten percent of the principal amount based on Kentucky comparative fault principles. Citing the Medicare Secondary Payer Manual, the Council explained that "Medicare policy requires recovering payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor

action, without regard to how the settlement agreement stipulates disbursement should be made." The Council held that it would not reduce the recovery amount because Medicare recognizes allocations of liability payments only when payment is based on a court order or adjudged on the merits of the case and, in this instance, payment was based on a settlement. Furthermore, the Council found that "the allocation of liability in this case is speculative since it was not determined by a judge or jury." The Council also held that Medicare does not recognize the "make whole" doctrine. The Council explained that Plaintiff had submitted no evidence demonstrating that the recovery would cause undue hardship, that he had changed his position to his detriment because of the recovery, or that he had been put in a worse position than before the accident. For these reasons, the Council determined that the recovery would not be against equity and good conscience and affirmed the ALJ's decision denying Plaintiff's waiver request.

## STANDARD

A district court reviews a final decision of the Secretary of the Department of Health and Human Services pursuant to 42 U.S.C. § 405(g). 42 U.S.C. § 1395ff(b)(1)(A). The findings of the Secretary are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan v. Comm'r of Social Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Besaw v. Sec'y of Health and Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). In determining whether substantial evidence exists, the court must examine the entire administrative record as a whole. *Workman v. Comm'r of Social Sec.*, 105 F. App'x 794, 2004 WL 1745782, at *4 (6th Cir. 2004).

**DISCUSSION**

Upon request, CMS may waive recovery of conditional payments made by Medicare. *See* 20 C.F.R. § 404.506. Under the Social Security Act, waiver of recovery may be granted where (1) a claimant is without fault and (2) recovery would either defeat the purposes of Title II or would be against equity and good conscience. 42 U.S.C. § 404(b). A recovery would defeat the purposes of Title II if it caused the claimant to suffer financial hardship by depriving him "of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508. A recovery would be against equity and good conscience if the claimant (1) changed his position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself; or (2) was living in a separate household from the overpaid person at the time of the overpayment and did not receive the overpayment. *Id.* at § 404.509(a). The claimant's "financial circumstances are not material to a finding of against equity and good conscience." *Id.* at § 404.509(b).

Here, it is undisputed that Plaintiff is without fault. While not particularly clear, the Court understands Plaintiff's brief to present two arguments for why the relevant regulations were misapplied in this case, making any recovery against equity and good conscience. First, Plaintiff argues that the recovery should be reduced based on equitable allocation principles. Second, Plaintiff argues that the recovery should be waived in its entirety under the "made whole" doctrine. Plaintiff does not argue that the recovery would defeat the purposes of Title II.

**I.      Equitable Allocation**

Plaintiff cites several cases in support of his argument that the recovery should be reduced based on equitable allocation principles.

First, Plaintiff finds an "analogous situation" in the Supreme Court's decision in *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006).  In *Ahlborn*, a Medicaid recipient injured in a car accident brought suit when the Arkansas Department of Health and Human Services ("ADHS") placed a lien on the proceeds of her settlement with the tortfeasor for more than the cost of her medical expenses.  *Id.* at 274.  By state law, ADHS was entitled to recover the entirety of the costs it paid on a Medicaid recipient's behalf, not just the amount paid for medical expenses.  *Id.* at 278.  The Supreme Court determined that the Arkansas law was unenforceable because it conflicted with federal law that placed express limits on a state's power to pursue recovery of funds it paid on behalf of a recipient.  *Id.* at 283 (citing 42 U.S.C. §§ 1396a(a)(18), 1396p).

The Court finds no analogous situation between *Ahlborn* and the present case.  First, Medicaid is a federally-funded, state-administered program.  *Id.* at 275; *see also* 42 U.S.C. § 1396 *et seq*.  Thus, recovery for Medicaid payments is governed by state law within the confines of federal parameters.  547 U.S. at 283-84.  In contrast, Medicare payments are governed completely by federal law.  *See* 42 U.S.C. § 1395 *et seq.*  More importantly, the brief discussion of subrogation rights in the *Ahlborn* decision is dicta and in the context of an Arkansas law that the Supreme Court found unenforceable.  *See* 547 U.S. at 278-79 (discussing a decision by the Arkansas Supreme Court finding that ADHS's ability to recoup Medicaid payments from third parties or recipients was not restricted by equitable subrogation principles).  Contrary to Plaintiff's assertion, the *Ahlborn* decision does not stand for the proposition that "Medicaid's subrogation recovery for medical expenses paid should be pro-rated" or that comparative fault principles should be taken into account in determining the amount of recovery.  For these

reasons, the Court finds that Plaintiff's reliance on *Ahlborn* is without merit.

Next, Plaintiff cites to the Ninth Circuit's decision in *Quinlivan v. Sullivan*, 916 F.2d 524 (9th Cir. 1990). In *Quinlivan*, a disabled convicted felon requested a waiver of the Social Security Administration's recovery of disability benefits he received while in prison despite an amendment to the Social Security Act prohibiting payment of disability benefits to incarcerated felons. 916 F.2d at 525. The question before the Ninth Circuit was whether the Secretary's definition of "equity and good conscience," limited by regulation to whether the claimant had changed his position for the worse or relinquished a valuable right based on reliance or was living in a separate household from the overpaid person and did not receive the overpayment, 20 C.F.R. § 404.509, was unreasonably narrow. *Id.*

Interpreting the waiver provision, 42 U.S.C. § 404(b), the Ninth Circuit held that requiring the plaintiff to repay the overpayment would be against equity and good conscience. 916 F.2d at 526. The court found that the legislative history of § 404(b) demonstrated that Congress intended to broaden the availability of waivers. *Id.* Therefore, the definition of equity and good conscience "cannot be limited to the three narrow definitions set forth in the Secretary's regulation." *Id.* at 527. The court explained:

> Congress intended a broad concept of fairness to apply to waiver requests, one that reflects the ordinary meaning of the statutory language and takes into account the facts and circumstances of each case. . . . It is unfair to have expected Quinlivan to hold the funds for more than two years after his release, without any prospect of steady income and with eligibility for general assistance dependent on his level of assets. Given this unusual set of circumstances, we conclude that requiring Quinlivan to repay the funds now would be against equity and good conscience as that phrase is commonly understood.

*Id.*

While the *Quinlivan* decision does not lend direct support for Plaintiff's equitable

allocation argument, it does lend support for a broad reading of the definition of "equity and good conscience" under the waiver provision. The Secretary responds that *Quinlivan* is distinguishable from the present case in that Plaintiff has presented no evidence to support his argument that full recovery would be against equity and good conscience. Indeed, the Council found in its amended decision that "appellant has not supplied any information regarding his financial situation such as income, expenses, any additional resources, or a monthly budget. Further, after repaying Medicare in full and deducting attorney's fees, the appellant retains $43,647.58 of the settlement proceeds."

Even if the Court were to adopt the broad definition of "equity and good conscience" articulated in the *Quinlivan* decision, Plaintiff has argued no facts nor presented any evidence to support a finding of unusual circumstances warranting a waiver. The court in *Quinlivan* acknowledged that a broad definition of "equity and good conscience" "does not mean that whenever an individual is found to be without fault, it necessarily follows that waiver is appropriate." 916 F.2d at 527. Having reviewed the record, the Court finds that Plaintiff has failed to establish that requiring him to pay the full recovery would be against equity and good conscience.

Plaintiff also relies on *In re Dow Corning Corporation*, 250 B.R. 298 (Bankr. E.D. Mich. 2000), in making his equitable allocation argument. *In re Dow Corning*, a bankruptcy case, involved Dow Corning's challenge to a number of proofs of claim filed by the United States on behalf of four federal agencies, including the Health Care Financing Administration ("HCFA"), which based its claim on the Medicare Secondary Payer Act. 250 B.R. at 307. The original proof of claim filed on behalf of HCFA sought reimbursement for an unstated amount of

8

Medicare payments for medical care provided to 10,879 unidentified individuals for allegedly defective breast implants manufactured by Dow Corning. *Id.* Dow Corning argued that the proof of claim should be disallowed as a matter of law because it was insufficiently documented. *Id.* at 322. As an example, Dow Corning pointed to the fact that the United States had not established tort liability, i.e. that the Dow Corning product was the one used by the Medicare beneficiaries who suffered injuries. *Id.* The United States responded that it did not have to establish tort liability because Dow Corning's reorganization contained an settlement offer to breast implant claimants. *Id.* at 340-41. Thus, the United States argued that the settlement was an acknowledgment by Dow Corning that it was required or responsible for the Medicare payments in question. *Id.* at 341.

The bankruptcy court rejected the United States' settlement argument, explaining that the fact that Dow Corning planned to settle with claimants in no way acknowledged liability on its part. *Id.* (citing *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995)). In a comprehensive analysis, the court then went on to explain how the United States' claim was essentially one for subrogation:

> [T]he [Medicare Secondary Payer Act] provides the Government with an independent right to bring a direct claim against a liability insurer that is potentially "required or responsible" for the Medicare payment in question. And when the defendant is a liability insurer the claim will be founded upon tort law and the tort in question will be the one allegedly committed by the insured against the Medicare beneficiary. To prevail, the Government must step into the shoes of the Medicare beneficiary and establish the tort. If the beneficiary were to initiate the action, it would be governed by the tort law of the applicable state law. Because the Government's claim will be premised upon this same tort, it too will be governed by the tort law of the applicable state.

*Id.* at 342. Thus, the bankruptcy court found that for the United States to prevail on its proof of claim, it would have to first establish liability under the substantive law of the applicable state.

*Id.* at 346.

The Court understands Plaintiff's argument to be that because the bankruptcy court in *In re Dow Corning* found the United States' action under 42 U.S.C. § 1395y(b)(2) to essentially be one for subrogation governed by state law, then CMS should likewise take into consideration state law equitable allocation principles in determining whether and to what extent a recovery can be sought against Plaintiff in this case. However, Plaintiff's understanding of *In re Dow Corning* is misplaced.

The bankruptcy court in *In re Dow Corning* is correct that for there to be a cause of action for recovery there must first be some underlying claim. This is because there can be no recovery under the Medicare Secondary Payer Act where there is no primary payer, i.e. liability insurer, that allows for Medicare to act as a secondary payer. *See* 42 U.S.C. § 1395y(b)(2). The bankruptcy court is also correct that whatever the underlying claim is, it is governed by state law. This is because an underlying claim, most often involving an injured plaintiff and tortfeasor, is adjudicated under state common law. In fact, CMS policy recognizes the role of the court in resolving underlying claims since it limits its right of recovery where a court order or adjudication on the merits allocates the underlying claim. *See* Medicare Secondary Payer Manual, ch. 7, § 50.4.4.[2]

The complex issue decided by the bankruptcy court in *In re Dow Corning* was whether the United States could bring an independent and subrogatory claim under the Medicare

---

[2] In contrast, CMS policy specifically provides that it will recover "payments from liability awards or settlements, whether the settlement arises from a personal injury action or a survivor action, without regard to how the settlement agreement stipulates disbursement should be made." Medicare Secondary Payer Manual, Ch. 7, § 50.4.4.

Secondary Payer Act. 250 B.R. at 342. After discussing a plethora of case law on the subject, the bankruptcy court ultimately determined that the United States could bring an independent and subrogatory claim. *Id.* at 343-44. It was in this context that the bankruptcy court determined that because the United States had an independent and subrogatory claim, and was effectively acting as a primary payer seeking subrogation from a tortfeasor, it would have to establish an underlying tort claim under state law before it could receive subrogation.

The Court expresses no opinion regarding the validity of the bankruptcy court's determination in *In re Dow Corning*. However, the Court does find that the decision of the bankruptcy court in *In re Dow Corning* has nothing to do with the present case. This is not a situation where the United States seeks to bring its own direct action against an alleged tortfeasor as a primary payer. The primary payer in this case is the insurer who paid $125,000 to Plaintiff pursuant to the settlement agreement between Plaintiff and Pennyrile. More importantly, the underlying claim in this case was not adjudicated on the merits; it was settled. In other words, had Plaintiff wanted equitable allocation and subrogation principles to apply in this case, then he should have proceeded to trial on the merits of his tort claim in state court. Finally, the *In re Dow Corning* decision does not address the waiver provision, nor does it have any bearing on Plaintiff's equity and good conscience argument. For these reasons, the Court finds that Plaintiff's reliance on *In re Dow Corning* is without merit.

As the Council explained in its amended decision, any allocation of liability proposed by Plaintiff would be purely speculative. Plaintiff has offered no evidence demonstrating that recovery is against equity and good conscience. There is no evidence in the record, nor does Plaintiff argue, that the repayment would cause him undue hardship or that he changed his

position for the worse or relinquished a valuable right because of the repayment. In addition, the case law cited by Plaintiff does not support his argument. For these reasons, the Court concludes that the findings of the Secretary are supported by substantial evidence.

## II.     Made Whole Doctrine

Plaintiff also states that any recovery should be waived under the "made whole" doctrine. However, in his brief Plaintiff fails to expound upon the "made whole" doctrine. He cites no statutory, regulatory, or case law in support of it, nor does he explain how it demonstrates that any recovery by CMS would be against equity and good conscience.

Plaintiff filed the same brief throughout the appellate process. In its amended decision, the Council held that Medicare does not recognize the "made whole" doctrine. As Plaintiff has cited no legal authority in support of the "made whole" doctrine, nor has he explained its application in this case, the Court must conclude that the findings of the Secretary are supported by substantial evidence.

Current regulations and law compel the Court's decision. Nonetheless, the Court is not unsympathetic to the dilemma facing Plaintiff and his counsel. The current law requires an adjudication on the merits, which is costly. While CMS essentially receives free representation for the collection of its claim and no offset for a fault allocation, Plaintiff must pay attorney's fees and costs for a settlement he perceived to be based on an exposure or fault allocation by the settling defendant. Nevertheless, the Court believes that its decision is correct based on the current status of the law.

## CONCLUSION

For the foregoing reasons, the decision of the Department of Health and Human Services

is upheld.  The herein action is DISMISSED with prejudice.

      An appropriate order shall follow.